UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| CULVER FRANCHISING SYSTEM, INC., | ) | |
| | ) | |
| Plaintiff, | ) | 16 C 72 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| STEAK N SHAKE INC., | ) | |
| | ) | |
| Defendant. | ) | |

**M<span>EMORANDUM</span> O<span>PINION AND</span> O<span>RDER</span>**

Culver Franchising System, Inc., brought this suit against Steak n Shake Inc., alleging that Steak n Shake unlawfully copied one of its television commercials in violation of the Copyright Act, 17 U.S.C. § 101 *et seq*. Doc. 1. Steak n Shake has moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that the two commercials are not substantially similar. Doc. 14. The motion is granted, and the complaint is dismissed without prejudice to Culver attempting to replead.

**Background**

On a Rule 12(b)(6) motion, the court must accept the complaint's well-pleaded factual allegations, with all reasonable inferences drawn in Culver's favor, but not its legal conclusions. *See Smoke Shop, LLC v. United States*, 761 F.3d 779, 785 (7th Cir. 2014). The court must also consider "documents attached to the complaint, documents that are critical to the complaint and referred to in it, and information that is subject to proper judicial notice," along with additional facts set forth in Culver's brief opposing dismissal, so long as those additional facts "are consistent with the pleadings." *Phillips v. Prudential Ins. Co. of Am.*, 714 F.3d 1017, 1020 (7th Cir. 2013) (internal quotation marks omitted). The facts are set forth as favorably to Culver as

1

those materials permit. *See Meade v. Moraine Valley Cmty. Coll.*, 770 F.3d 680, 682 (7th Cir. 2014).

Culver and Steak n Shake are franchisors that license individuals to operate Culver's and Steak n Shake restaurants, respectively, throughout the United States. Doc. 1 at ¶¶ 1-2. In December 2014, Culver began developing its "Butcher-Quality Beef" television commercial, which highlights Culver's "ButterBurger." *Id*. at ¶¶ 6-7. The commercial first aired on April 13, 2015. *Id*. at ¶ 8.

Culver's commercial opens in a butcher shop with its co-founder, Craig Culver, reminiscing with a butcher, Fritz, about "the good old days":



>**Craig Culver**: "The ButterBurger is made of just three cuts of fresh Midwest beef, nothing more, nothing less. It reminds me of the good old days when we first opened Culver's, we would call up the butcher shop and we'd buy our beef from there each and every day."
>
>**Fritz**: "You can't get any fresher than that."
>
>**Craig Culver**: "Well today we still get fresh beef into our restaurants."

During this part of the conversation, the commercial intersperses shots of (1) Culver's logo with the words "Butcher-Quality Beef"; (2) a close-up of the ButterBurger; and (3) a mother and her son selecting and purchasing meat from another butcher in the shop.



The camera then focuses on three cuts of beef, as Craig and Fritz discuss how they are incorporated into the ButterBurger:



> **Craig Culver**: "We don't skimp on the quality of our beef. So we got the sirloin, the chuck and the plate. No fillers, that's it."
>
> **Fritz**: "All prized cuts, all well-marbled for richness and flavor. And when you put them all together, that ends up to be a very high quality burger."

Craig then cooks two patties, pressing down on them with a spatula and metal cylinder. Craig and Fritz continue discussing the patties' fresh preparation as Craig assembles a burger:

3





      **Craig Culver**: "This is where those three wonderful cuts of beef come together."

      **Fritz**: "You can just tell that blend is working in there."

      **Craig Culver**: "And we sear them, and that seals in the juices of the burger. That's where that wonderful steak taste comes from."

      **Fritz**: "It doesn't get any better than that."

      **Craig Culver**: "You know all our burgers are cooked to order. And that's a little different than most of our competitors. The Culver's ButterBurger."

Finally, the commercial transitions to a shot of the completed ButterBurger and then to Culver's logo; Fritz says, "Craig, that is one great burger," followed by Craig exclaiming, "Welcome to delicious!"



The commercial runs for one minute and may be viewed at

https://www.youtube.com/watch_popup?feature=player_embedded&v=gfULlxDEQio. *Id*. at

¶ 14.

Seven months after the "Butcher-Quality Beef" commercial debuted, Steak n Shake began running its "The Original Steakburger" commercial. *Id*. at ¶ 12. The ad opens in a butcher shop with a butcher speaking directly to the camera about Steak n Shake's Steakburger:



> **Butcher**: "In 1934, Steak n Shake decided the world didn't need another hamburger. It needed a steak burger."

The butcher then discusses the three cuts of beef used in the Steakburger, as the camera focuses on each cut individually:

5



> **Butcher**: "So they used 100% beef, including prized cuts of sirloin, round and t-bone; well-marbled to add juiciness."

The butcher proceeds to cook and assemble the burger, compressing the patty with a spatula and a two-pronged fork. The commercial concludes with a shot of the finished burger and Steak n Shake's logo, as the butcher offers the following praise:



> **Butcher**: "And it all comes together; a quick sear to seal in the flavor and create those unique crispy edges you'll only get from a steak burger. And that's what makes Steak n Shake, home of the original Steakburger."

The "Original Steakburger" commercial runs for thirty seconds and may be viewed at https://www.youtube.com/watch_popup?v=sfwjYym8tWc. *Id*. at ¶ 14.

Culver alleges that Steak n Shake knowingly and willfully infringed its copyright on the "Butcher-Quality Beef" commercial in violation of 17 U.S.C. § 106. *Id*. at ¶¶ 22-23. Specifically, Culver claims that the "expression, images, dialogue, and sequencing of the two advertisements are substantially similar," as they both "feature a quintessential local butcher's shop with an older butcher displaying three different cuts of 'well-marbled' beef that 'come together' as the camera pans to the grill showing the patties being seared to 'seal' in the flavor or juices." *Id*. at ¶ 14. Culver seeks injunctive relief and damages. *Id*. at ¶¶ 24-27.

Attached to Steak n Shake's motion to dismiss are three exhibits that fall outside the pleadings. Doc. 15 at 29-41. Culver argues that it would be improper for the court to consider those exhibits without treating Steak n Shake's motion as one for summary judgment. Doc. 21 at 7: *see* Fed. R. Civ. P. 12(d); *188 LLC v. Trinity Indus., Inc.*, 300 F.3d 730, 735 (7th Cir. 2002) ("[T]he general rule [is] that when additional evidence is attached [to] a motion to dismiss, the court must either convert the 12(b)(6) motion into a motion for summary judgment under Rule 56 … or exclude the documents attached to the motion to dismiss and continue under Rule 12.") (internal quotation marks omitted). Erring on the side of caution, the court will disregard those exhibits for purposes of this motion.

## Discussion

Section 106 of the Copyright Act, 17 U.S.C. § 106, grants copyright owners the exclusive right to reproduce their copyrighted works. To establish copyright infringement, a plaintiff must show: "(1) ownership of a valid copyright; and (2) unauthorized copying of constituent elements

of the work that are original." *Hobbs v. John*, 722 F.3d 1089, 1094 (7th Cir. 2013); *see also Peters v. West*, 692 F.3d 629, 632 (7th Cir. 2012). "Unauthorized copying" may be proved with either direct evidence (such as an admission of copying) or, more typically, "by showing that the defendant had the opportunity to copy the original (often called 'access') and that the two works are 'substantially similar,' thus permitting an inference that the defendant actually did copy the original." *Peters*, 692 F.3d at 633. Steak n Shake does not dispute that it had access to Culver's commercial or that Culver owns a valid copyright thereon; rather, Steak n Shake contends that Culver's allegations fall short because, as a matter of law, its "The Original Steakburger" commercial is not substantially similar to Culver's "Butcher-Quality Beef" commercial.

In assessing whether two works are substantially similar, the court "must first identify which aspects of the [plaintiff's] work, if any, are protectable by copyright." *Nova Design Build, Inc. v. Grace Hotels LLC*, 652 F.3d 814, 817 (7th Cir. 2011) (alteration in original) (internal quotation marks omitted). The court then analyzes "whether the allegedly infringing work is so similar to the [plaintiff's] work that an ordinary reasonable person would conclude that the defendant unlawfully appropriated the protectable elements of the work." *Id*. at 818 (alteration in original) (internal quotation marks omitted). The "more a work is both like an already copyrighted work *and*—for this is equally important—unlike anything that is in the public domain, the less likely it is to be an independent creation." *JCW Invs., Inc. v. Novelty, Inc.*, 482 F.3d 910, 915 (7th Cir. 2007) (internal quotation mark omitted).

Copyright protects those elements of a work that "possess originality," with originality "requir[ing] that the elements be independently created and possess at least some minimal degree of creativity." *Nova Design Build*, 652 F.3d at 818; *see also* 17 U.S.C. § 102(a) ("Copyright protection subsists … in original works of authorship …."); *Feist Publ'ns, Inc. v. Rural Tel.*

8

*Serv. Co., Inc.*, 499 U.S. 340, 345 (1991) ("The *sine qua non* of copyright is originality."). Moreover, copyright protection extends only to the original expression of an idea, not to the idea itself. *See* 17 U.S.C. § 102(b) ("In no case does copyright protection for an original work of authorship extend to any idea, procedure, process, system, method of operation, concept, principle, or discovery, regardless of the form in which it is described, explained, illustrated, or embodied in such work."); *Sissom v. Snow*, 626 F. App'x 163, 166 (7th Cir. 2015) ("It is a foundation of copyright law that only the *form* of an author's expression is protectable, not the facts or ideas being expressed."); *Seng-Tiong Ho v. Taflove*, 648 F.3d 489, 497 (7th Cir. 2011) ("In essence, the Copyright Act protects the expression of ideas, but exempts the ideas themselves from protection.") (internal quotation marks omitted); *JCW Invs.*, 482 F.3d at 917 ("It is, of course, a fundamental tenet of copyright law that the idea is not protected, but the original expression of the idea is.").

When an idea is capable of very few expressions, the idea and its expression "merge" and the expression may not be copyrighted. *See Seng-Tiong Ho*, 648 F.3d at 497 ("[W]hen there is only one feasible way of expressing an idea, so that if the expression were copyrightable it would mean that the idea was copyrightable, the expression is not protected.") (internal quotation marks omitted). This is known as the merger doctrine. *See ibid.* The related *scènes à faire* doctrine further circumscribes the scope of copyright protection. As the Seventh Circuit has explained, this doctrine provides that "even at the level of particular expression, the Copyright Act does not protect incidents, characters or settings which are as a practical matter indispensable, or at least standard, in the treatment of a given topic." *Hobbs*, 722 F.3d at 1095 (internal quotation marks omitted); *see also Incredible Techs., Inc. v. Virtual Techs., Inc.*, 400 F.3d 1007, 1011-12 (7th Cir. 2005) (same); *Bucklew v. Hawkins, Ash, Baptie & Co., LLP*, 329 F.3d 923, 929 (7th Cir. 2003)

9

("[A] copyright owner can't prove infringement by pointing to features of his work that are found in the defendant's work as well but that are so rudimentary, commonplace, standard, or unavoidable that they do not serve to distinguish one work within a class of works from another."); *Reyher v. Children's Television Workshop*, 533 F.2d 87, 91 (2d Cir. 1976) ("Copyrights … do not protect thematic concepts or scenes which necessarily must follow from certain similar plot situations.").

The Seventh Circuit on two recent occasions has applied the "substantial similarity" test in the context of a Rule 12(b)(6) motion. In *Hobbs*, the plaintiff claimed that Elton John's song "Nikita" was an unauthorized copy of the plaintiff's song "Natasha." 722 F.3d at 1091. The plaintiff identified six allegedly similar elements in both songs:

> (1) A theme of impossible love between a Western man and a Communist woman during the Cold War;
>
> (2) References to events that never happened;
>
> (3) Descriptions of the beloved's light eyes;
>
> (4) References to written correspondence to the beloved;
>
> (5) Repetition of the beloved's name, the word "never," the phrase "to hold you," the phrase "I need you," and some form of the phrase "you will never know;" and
>
> (6) A title which is a one-word, phonetically-similar title consisting of a three-syllable female Russian name, both beginning with the letter "N" and ending with the letter "A."

*Id*. at 1094 (footnote omitted). The Seventh Circuit held that "even when the allegedly similar elements between the songs are considered in combination, the songs are not substantially similar." *Id*. at 1093. The court explained that the two songs expressed the first four common elements differently. For example, while "Natasha" concerns two people who briefly meet but then are torn apart because of the Cold War, "Nikita" tells the story of a man who desires a

woman from afar whom he can never meet because she is not free, and while Natasha had "pale blue eyes," Nikita had "eyes that looked like ice on fire." *Id*. at 1095. As to the last two common elements, the Seventh Circuit agreed that they were similarly expressed, but still found that they did not rise to the level of "substantial similarity" because they were "rudimentary, commonplace, standard, or unavoidable in popular love songs." *Id*. at 1096. For these reasons, the court ruled that dismissal was appropriate.

In *Peters*, the Seventh Circuit applied the substantial similarity test to two other songs, both called "Stronger"—one written by the Vincent Peters, the plaintiff, and the second released by Kanye West, the defendant. 692 F.3d at 630. Peters pointed to three similarities between the two works: (1) the hooks and titles of both songs derive from Nietzsche's dictum, "That which does not kill us makes us stronger"; (2) both rhyme "stronger" with "longer" and "wronger"; (3) both include references to Kate Moss, the British model. *Id*. at 635. Viewing all three elements together, the Seventh Circuit again concluded that the plaintiff did not have a viable copyright claim. *Id*. at 636. First, the court found that the common title and lyrics were not protected by copyright given the "ubiquity of this common saying" and the fact that it "has been repeatedly invoked in song lyrics over the past century." *Id*. at 635-36. Second, the court was not "persuaded that the particular rhymes of stronger, longer, and wronger qualif[ied] for copyright protection." *Id*. at 636 (citing *Prunte v. Universal Music Grp*., 699 F. Supp. 2d 15, 29 (D.D.C. 2010), for the proposition that common rhyme schemes lack the originality necessary to be copyrightable). Third, the Seventh Circuit explained that the references to Kate Moss could be coincidental, as "analogizing to models as a shorthand for beauty is, for better or for worse, commonplace in our society." *Ibid*.

11

Likewise, in affirming the denial of a preliminary injunction, the Seventh Circuit in *Incredible Technologies* invoked the *scènes à faire* doctrine in ruling that the plaintiff was unlikely to prevail on its copyright infringement claim against a rival golf video game company. As the court explained: "In presenting a realistic video golf game, one would, by definition, need golf courses, clubs, a selection menu, a golfer, a wind meter, *etc*. Sand traps and water hazards are a fact of life for golfers, real and virtual." *Incredible Techs.*, 400 F.3d at 1015. Because those elements were covered by the *scènes à faire* doctrine, they were "afforded protection only from virtually identical copying," which the plaintiff had not established. *Ibid*.

With these governing precedents in mind, the court turns to this case. Culver's complaint alleges that the "expression, images, dialogue, and sequencing of the two advertisements are substantially similar." Doc. 1 at ¶ 14. In opposing dismissal, Culver argues that "the commercials at issue here are highly similar in terms of their total concept and feel." Doc. 21 at 13. In support, Culver identifies the following common elements: (1) the commercial opens with a butcher in a white uniform in a butcher shop; (2) then, the company logo appears; (3) the butcher describes the beef's quality; (4) three different cuts of beef are shown as the butcher identifies the cuts and describes how they are "well-marbled"; (5) patties are grilled and flattened with a spatula as the griller describes how the cuts "come[] together," using the words "sear" and "seal"; (6) the burger is stacked and topped with cheese; and (7) the commercial ends with a close-up of the completed burger before the company's logo again appears. *Id*. at 13-14. Culver maintains that the unique "combination of dialogue, pacing, sequence, background, and other visual and expressive elements" in its ad deserves copyright protection. *Id*. at 15.

Under the standard set forth and applied by the Seventh Circuit in *Peters* and *Hobbs*, the commercials are not substantially similar as a matter of law. Several of the seven common

elements identified by Culver lack the necessary modicum of creativity to give rise to copyright protection. Regarding the second and seventh elements, there is nothing unique about a company displaying its logo and product at the beginning and/or end of a commercial. The same is true for the sixth element; at least as early as the iconic 1975 "Two all-beef patties, special sauce, lettuce, cheese, pickles, onions on a sesame-seed bun" McDonald's Big Mac ad, burger commercials have regularly featured the grilling and/or assembling of a burger, followed by a view of the final product. *See* https://www.youtube.com/watch_popup?v=dK2qBbDn5W0 (McDonald's); https://www.youtube.com/watch_popup?v=tEGjGHjvoAs (Smashburger); https://www.youtube.com/watch_popup?v=KJXzkUH72cY (Burger King); https://www.youtube.com/watch_popup?v=YhZI7XN5xRA (Wendy's); *cf. Miracle Blade, LLC v. Ebrands Commerce Grp., LLC*, 207 F. Supp. 2d 1136, 1150 (D. Nev. 2002) (holding that, among infomercials for kitchen knives, "fruit, vegetable, filet and abuse demonstrations" were *scènes à faire* and too unoriginal for copyright protection). The sequence of Culver's commercial is commonplace, as it would be nonsensical for a commercial to open with a cooked burger and then finish with a prolonged shot of a raw patty.

Regarding the fourth and fifth elements, pressing down on patties with a spatula and flipping them while they cook is standard grilling practice; adding cheese to a burger is not a stroke of originality; and it is common parlance to describe beef as "marbled," to speak of "searing" and "sealing" juices, and to discuss how flavors and ingredients "come together." *See* https://www.youtube.com/watch_popup?v=sorgUgcTeW8 (Arby's commercial describing its product as having "fantastic marbling");
https://www.youtube.com/watch_popup?v=tEGjGHjvoAs (Smashburger commercial discussing how its burgers are prepared by "searing in the flavor to make it juicy"). If the rhyming of

"stronger," "longer," and "wronger" in a song, *see Peters*, 692 F.3d at 636, and the repetition of "to hold you," "I need you," and "you'll never know" in a song, *see Hobbs*, 722 F.3d at 1096, do not warrant copyright protection, then neither does the dialogue in Culver's commercial. *See Alberto-Culver Co. v. Andrea Dumon, Inc.*, 466 F.2d 705, 711 (7th Cir. 1972) (explaining that short phrases hardly qualify as an appreciable amount of original expression).

As for the remaining common elements, both commercials take place in butcher shops and portray butchers wearing white aprons who show the three cuts of beef used to make the burgers in question. It is hardly original for an advertisement to describe the origins and quality of a meat product or to feature a butcher. The butchers function as stock characters—both don a white butcher coat and, unsurprisingly, work in a butcher shop. Indeed, Culver effectively concedes that the settings for the commercials are generic by describing each butcher shop as a "*quintessential* local butcher's shop." Doc. 1 at ¶ 14 (emphasis added). Because there is nothing distinctive about the expression of Culver's butcher, and because Culver cannot copyright the mere concept of a butcher talking about beef, Culver's butcher is not protected expression. *See Gaiman v. McFarlane*, 360 F.3d 644, 659-60 (7th Cir. 2004) (noting that "stock characters" such as "a drunken suburban housewife, a gesticulating Frenchman, a fire-breathing dragon, [or] a talking cat" are covered by the *scènes à faire* doctrine and thus are not copyrightable, explaining that "such stereotyped characters are the products not of the creative imagination but of simple observation of the human comedy"); *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015) (explaining that stock characters must exhibit some unique elements of expression to be entitled to copyright protection; for example, "a magician in standard magician garb" is not a protectable character); *Williams v. Crichton*, 84 F.3d 581, 589 (2d Cir. 1996) ("As Judge Learned Hand advised, 'the less developed the characters, the less they can be copyrighted; that is the penalty

an author must bear for marking them too indistinctly.'") (quoting *Nichols v. Universal Pictures Corp.*, 45 F.2d 119, 121 (2d Cir. 1930)).

Moreover, the commercials differ in certain significant respects. While they both display images of raw beef, they do so differently; "Butcher-Quality Beef" displays the cuts simultaneously, while "The Original Steakburger" focuses on each cut individually. "Butcher-Quality Beef" features a conversation between Craig Culver and Fritz, and twice uses a split screen to show three different images at once. In "The Original Steakburger," by contrast, an unnamed butcher speaks directly to the camera and the entire commercial consists of single images (*i.e.*, it does not use split screens).

Culver contends that the commercials are substantially similar under the "ordinary reasonable person" test, *see Nova Design Build*, 652 F.3d at 818, because a Culver's customer sent in a comment card expressing outrage that Steak n Shake copied Culver's commercial. Doc. 21 at 11 n.3. The comment reads in relevant part: "Did you notice that those losers at Steak N Shake almost duplicated one of your commercials? They blatantly used a similar looking man who also talks about the steak cuts going into the burgers. It copies your commercial almost blow by blow!" *Ibid*. Culver's take on the "ordinary observer" test is too literal. As the Seventh Circuit warned: "[T]he concept of the ordinary observer must be viewed with caution … and we must heed the principle that, despite what the ordinary observer might see, the copyright laws preclude appropriation of only those elements of the work that are protected by the copyright." *Incredible Techs.*, 400 F.3d at 1011. So, just because a customer sincerely believes that Steak n Shake "blatantly" copied Culver's commercial does not mean that the commercials are substantially similar—especially where, as here, the commercials' common elements are not protected by the Copyright Act as a matter of law.

Culver also argues that determining "substantial similarity is not a proper inquiry for a motion to dismiss." Doc. 21 at 6. This argument ignores *Peters* and *Hobbs*—both controlling precedents decided within the last five years—where the Seventh Circuit made clear that district courts on a Rule 12(b)(6) motion may rely on common knowledge and experience in assessing whether the plaintiff could prevail on the substantial similarity issue. *See Hobbs*, 722 F.3d at 1096 (holding, as a matter of law, that the two songs "do not share enough unique features to give rise to a breach of the duty not to copy another's work") (internal quotation marks omitted); *Peters*, 692 F.3d at 636 ("Even viewing all of these [similarities] in combination, we conclude that Vince P has not plausibly alleged that *Stronger* (KW) infringes on *Stronger* (VP)."). Other circuits are in accord. *See*, *e.g.*, *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 65 (2d Cir. 2010) (affirming dismissal at the Rule 12(b)(6) stage for lack of substantial similarity, and noting that several circuits had "likewise endorsed the practice of considering the question of substantial similarity on a motion to dismiss") (citing cases); *Jacobsen v. Deseret Book Co.*, 287 F.3d 936, 941-42 (10th Cir. 2002); *Nelson v. PRN Prods., Inc.*, 873 F.2d 1141, 1143-44 (8th Cir. 1989); *Christianson v. W. Publ'g Co.*, 149 F.2d 202, 203 (9th Cir. 1945). Therefore, this court may—and, indeed, must—evaluate substantial similarity in determining whether dismissal is warranted under Rule 12(b)(6). *See Fooey Inc. v. Gap, Inc.*, 2013 WL 2237515, at *1 (N.D. Ill. May 17, 2013) ("In copyright infringement cases, a court may dismiss under Rule 12(b)(6) when a plaintiff's complaint fails to establish a plausible basis for copyright infringement—substantial similarity between the works in question."); Evan Brown, "Shaking Out the 'Shakedowns': Pre-Discovery Dismissal of Copyright Infringement Cases After Comparison of the Works at Issue," 9 *Wash. J. L. Tech. & Arts* 69, 70 (2013) ("cases in which

the court need only compare works of authorship to determine whether the plaintiff's claims are plausible" are "excellent candidates for pre-discovery dismissal").

It bears mention at this point that Culver's brief opposing dismissal does not even acknowledge, let alone distinguish, *Hobbs* and *Peters*—this despite their centrality to Steak n Shake's initial brief and despite their being the two principal examples of the Seventh Circuit's current thinking on the substantial similarity issue. Ignoring precedent does not make it disappear, particularly from the perspective of a district judge duty-bound to follow that precedent. That Culver flat out ignored *Hobbs* and *Peters* is a tacit, yet unmistakable, admission that those two cases are fatal to its suit.

Finally, Culver argues that its commercial's elements, when considered together, create a whole greater than the sum of its parts and therefore warrant copyright protection even if the individual elements themselves are unprotected. Doc. 21 at 18. The Seventh Circuit has expressly reserved the question whether "a *unique* selection, arrangement, and combination of individually unprotectable elements in a [work] can support a copyright infringement claim." *Hobbs*, 722 F.3d at 1093 (emphasis added); *see also id*. at 1093 n.4 (noting that "there is a wealth of authority recognizing that, in certain situations, a unique arrangement of individually unprotectable elements can form an original expression entitled to copyright protection"); *Bucklew*, 329 F.3d at 929 ("Every expressive work can be decomposed into elements not themselves copyrightable—the cars in a car chase, the kiss in a love scene, the dive bombers in a movie about Pearl Harbor, or for that matter the letters of the alphabet in any written work. The presence of such elements obviously does not forfeit copyright protection of the work as a whole, but infringement cannot be found on the basis of such elements alone; it is the combination of

elements, or particular novel twists given to them, that supply the minimal originality required for copyright protection.").

Assuming that this is a valid copyright theory, Culver's claim would still fail because the components of its commercial are not arranged or combined in any appreciably unique way. As discussed above, both advertisements—from the description of the beef's quality to the grilling and assembling of the burger—are fairly standard in the fast food industry. Therefore, even when considering how the common elements are arranged, Culver cannot sustain a claim for copyright infringement. *See Francescatti v. Germanotta*, 2014 WL 2767231, at *19 (N.D. Ill. June 17, 2014) (holding that the plaintiff "has not established similarity between the songs as a whole; between individual, qualitatively important elements; nor a unique combination of elements. … Thus, no reasonable trier of fact could find that the songs' expressions are substantially similar.").

## Conclusion

Because Culver cannot show that Steak n Shake's "The Original Steakburger" commercial is substantially similar to its "Butcher-Quality Beef" commercial, Steak n Shake's motion to dismiss is granted. There are two reasons why dismissal with prejudice would be appropriate. First, repleading would appear to be futile because the fatal flaw in Culver's case—that the two commercials are not substantially similar as a matter of law—cannot be cured by amendment. *See Gonzalez-Koeneke v. West*, 791 F.3d 801, 807 (7th Cir. 2015) ("District courts … have broad discretion to deny leave to amend … where the amendment would be futile.") (internal quotation marks omitted). Second, Culver did not request an opportunity to replead in the event the court dismissed the complaint. *See James Cape & Sons Co. v. PCC Constr. Co.*, 453 F.3d 396, 400-01 (7th Cir. 2006) (rejecting the plaintiff's argument that the district court

erred in dismissing its complaint with prejudice, rather than without prejudice and with leave to amend, where the plaintiff did not request leave to amend). That said, the Seventh Circuit strongly prefers that district courts give a plaintiff at least one chance to amend after the original complaint is dismissed. *See Alioto v. Town of Lisbon*, 651 F.3d 715, 721 (7th Cir. 2011) ("[A] plaintiff ordinarily retains the ability to amend his complaint once as a matter of right, even after a court grants a motion to dismiss."); *Foster v. DeLuca*, 545 F.3d 582, 584 (7th Cir. 2008) ("[A]n order dismissing the original complaint normally does not eliminate the plaintiff's right to amend once as a matter of right.") (internal quotation marks omitted). Accordingly, the complaint is dismissed without prejudice and with leave to file an amended complaint by August 26, 2016. If Culver does not file an amended complaint by that date, the suit will be dismissed with prejudice.

August 5, 2016

United States District Judge